UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PATRICK L. JONES,                     )
                                         )
        Petitioner,             )
                                         )
        v.                      )         No. 4:15-CV-0327-NAB
                                         )
CINDY GRIFFITH[1],            )
                                         )
        Respondent.         )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Patrick L. Jones' ("Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 8). For the following reasons, the petition for a writ of habeas corpus will be denied.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Petitioner of two counts of statutory sodomy in the first degree[2], two counts of child molestation in the first degree, one count of statutory rape in the second degree, and one count of statutory sodomy in the second degree, and sentenced him to concurrent terms of imprisonment of thirty years, thirty years, fifteen years, fifteen years, seven years, and seven years. Resp't. Ex. H at 4.[3]

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

---

[1]  Warden Cindy Griffith is Jones' custodian and is substituted as the proper party respondent, replacing Troy Steele, pursuant to 28 U.S.C. § 2254, Rule 2(a).

[2]  On direct appeal, the Missouri Court of Appeals reversed one of movant's convictions for statutory sodomy for insufficient evidence, finding that there was an "absolute dearth of such evidence" presented at trial. Resp't. Ex. E at 4.

[3]  When referencing page numbers in the Respondent's exhibits, the undersigned will use the U.S. District Court page number at the top of the page.

TR [the victim] was born in August 1994. In May 2008, [Petitioner], the boyfriend of TR's mother, moved in with her family. TR initially slept in the basement. Approximately one week after the move, [Petitioner] went to the basement where TR was sleeping and placed his hand under her bra, felt her breasts, pulled off her shorts, rubbed her vagina with his hand, and rubbed her vagina with his penis. [Petitioner] threatened her and her family if she told anyone. Similar incidents happened in 2008 and 2009, even after TR moved upstairs and shared a bedroom with her sister. After TR's fourteenth birthday, [Petitioner] put his mouth on her vagina, and penetrated her with the head of his penis. TR never told her mother because she assumed that her mother would not believe her as her mother seemed to favor [Petitioner] over TR in disputes. TR eventually told her friend ["TR's Friend" or "Friend"] . . . about the incidents with [Petitioner]. [Her Friend] advised her to tell her mother, and later suggested that TR tell a counselor at her school.

During the week of Thanksgiving 2009, [TR's Friend] told a school counselor, Carol Robinson ("Counselor") that a friend of hers had a secret. Counselor said that the secret should be shared if it was of a serious nature, and if [TR's Friend] was uncomfortable with sharing it, to encourage her friend to do so. [TR's Friend] left and later returned to Counselor with TR. Counselor began asking questions of TR, about whether someone hit her, or made her feel uncomfortable. TR told her that it was her mother's boyfriend. Counselor asked if [Petitioner] had sex with her, at which point TR nodded her head and began to cry. Counselor reported the matter to her administrator.

Detective Harolton Clayborn of the St. Louis County Police contacted TR's mother, and attempted to contact [Petitioner]. [Petitioner] was arrested, and after reading him his Miranda rights, [Petitioner] acknowledged that he understood by initialing and signing the Miranda rights form. [Petitioner] did not request an attorney. During the questioning, [Petitioner] admitted that one time he was intoxicated and touched TR's breast in her bedroom. Under continued questioning, [Petitioner] began to cry and admitted to two other occasions when he went into TR's bedroom and touched her breast. He denied other acts. [Petitioner] stated to Detective Clayborn that he was tired of talking and wanted to leave, at which point Detective Clayborn asked him if he would reduce his statement to writing or if he would give an audio tape. [Petitioner] gave a written statement. [Petitioner]'s written statement was that on about three occasions, he was intoxicated by marijuana and alcohol and went into TR's bedroom by mistake, and feeling on what he thought was his side of the bed for TR's mother, he realized he was feeling TR's breasts. Prior to trial, [Petitioner] filed a motion to suppress his written statement, which the trial court denied.

At trial, TR, [TR's Friend], Counselor, and Detective Clayborn testified, and the State introduced a number of exhibits, including [Petitioner]'s written statement.

Resp't. Ex. E at 1-3.

The Missouri Court of Appeals, on direct appeal, reversed one of Petitioner's convictions for insufficient evidence, as noted *supra*, and in all other respects affirmed his conviction. Resp't. Ex. E. Petitioner filed a Rule 29.15 motion for post-conviction relief, which counsel amended, in which he sought relief on grounds that he was denied effective assistance of counsel. Resp't. Ex. F at 19. The motion court denied Petitioner's motion without an evidentiary hearing. Resp't Ex. F at 109. In his appeal of the motion court's denial of his motion for post-conviction relief, Petitioner raised two claims. Petitioner claimed that the motion court erred in denying his claims that his trial counsel was ineffective in (1) not calling the victim's mother to testify; and (2) failing to adequately question the victim about when the sexual assaults first began, and to impeach her with deposition testimony. The Missouri Court of Appeals affirmed the motion court's decision. Resp't Ex. I.

On February 19, 2015, Petitioner filed his *pro se* petition in the instant action. Petitioner raised three claims: (1) trial counsel was ineffective in failing to call the victim's mother to testify; (2) trial counsel was ineffective in failing to question the victim about when the sexual assaults first began and to impeach her with deposition testimony; and (3) the trial court abused its discretion in overruling his counsel's objections to the alleged hearsay testimony of the victim's Counselor and her Friend. Respondent filed a response (Doc. 11), and Petitioner filed a traverse (Doc. 14).

II. **LEGAL STANDARDS**

    **A. Standard for Reviewing Habeas Corpus Claims on the Merits**

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). However, the judge may not issue the writ if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977).

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the

governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## III.   DISCUSSION

### A.  Grounds One and Two: Ineffective Assistance of Trial Counsel

As Grounds One and Two both allege ineffective assistance of trial counsel, this Court will consider them together. In Ground One, Petitioner argues that his trial counsel was ineffective in failing to call the victim's mother to testify at trial. Petitioner alleges that the mother's testimony would have "cast doubt on the overall credibility of the child victim," and would have changed the outcome of the trial. (Doc. 1 at 5). In Ground Two, Petitioner asserts ineffectiveness of trial counsel for her failure to adequately question or impeach the victim about when the sexual incidents first occurred, because if the incidents happened after the victim's fourteenth birthday, Petitioner could only have been eligible for conviction of second-degree statutory sodomy, rather than first-degree. Petitioner raised both of these claims in his post-conviction appeal and the Missouri Court of Appeals denied them on their merits. Resp't. Ex. I at 3.

The Sixth Amendment guarantees a criminal [Petitioner] the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. To show ineffective assistance of counsel, a petitioner

must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [Petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

### i. *Failure to Call Victim's Mother to Testify*

When applying *Strickland* to claims involving an attorney's choice to exclude the testimony of certain potential witnesses, a court must bear in mind the principle that trial

counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed by hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An "attorney's decision not to . . . call a particular witness must be viewed from the perspective of counsel at the time the decision was made." *U.S. v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). To establish prejudice from counsel's failure to call a potential witness, "a petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001).

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner. The Missouri Court of Appeals properly noted that the *Strickland* analysis applied. Resp't Ex. I, at 4. The Missouri Court of Appeals reviewed the record and found that it refuted Petitioner's claim that trial counsel was ineffective in choosing to not have the victim's Mother testify at trial. Resp't Ex. I at 6. It further found that Petitioner failed to demonstrate that the mother's testimony "would have provided him with a viable, outcome-determinative defense," but would have at most served to impeach the testimony of the victim, and therefore Petitioner was not prejudiced by her failure to testify. *Id*. at 6. This was a reasonable conclusion in light of the record. Petitioner asserted that the mother would have testified that she and her daughter had a close relationship of the sort that would have led her to expect her daughter to reveal something as serious as sexual assault, and yet, TR did not confide in her mother. *Id*. at 6. Petitioner further asserted that mother would have testified that the victim had "trashed the basement" where she was sleeping and committed other acts of defiance and bad behavior. *Id*. Petitioner also asserted that the mother would have testified that she would have heard Petitioner entering the victim's room if that had happened.

*Id*. The Missouri Court of Appeals found that trial counsel was reasonable in not calling the mother to testify as to those matters. *Id*. It noted that the mother's "speculation as to why her daughter did not tell her that [Petitioner] was touching her inappropriately did not provide [him] with a defense." *Id*. It also found that the mother would not have been allowed to testify as to "specific bad acts of the victim, just to show the victim's character was bad." *Id*. Finally, the Missouri Court of Appeals found that the mother's potential testimony about being able to hear someone entering the victim's room would not have aided Petitioner, as he had already made a statement to the police that he did enter her room and touch her breast on three separate occasions. *Id*.

After reviewing the relevant portions of the record, the undersigned finds that it contains ample support for the Missouri Court of Appeals' conclusions. Additionally, Petitioner's defense was largely predicated on the theory that TR and her mother did not get along well, and that TR fabricated the allegations against him so that she could go and live with her Grandmother. Resp't. Ex. A at 107-117; Resp't. Ex. H at 17-18. It is not surprising, then, that Petitioner's counsel chose not to have the mother testify about the close nature of their relationship, when the defense strategy relied so heavily on demonstrating that their relationship was contentious in nature. The Court finds that trial counsel's decision not to call the victim's mother as a witness represented reasonable trial strategy, and thus falls within the "wide range of professionally competent assistance" sanctioned by *Strickland*, and the Missouri Court of Appeals reasonably applied that standard when it reached the same conclusion.

### ii. Failure to Adequately Question or Impeach the Victim

In Ground Two, Petitioner claims that his trial counsel was ineffective in her failure to adequately question or impeach the victim as to precisely when the first incidents of sexual

touching occurred. (Doc. 1 at 6-7). Petitioner asserts that if his counsel had adequately questioned the victim or impeached her with her deposition testimony on this issue, "there is a reasonable probability the jury would have concluded the State had not met its burden of proving the sexual incidents occurred when the child victim was under age fourteen." *Id.*

In his appeal from the denial of his post-conviction motion, Petitioner alleged that if his counsel had questioned the victim more carefully about the timeline of events, and impeached her with her inexact deposition testimony, it would have created doubt in the minds of jurors as to whether the first contact occurred before the victim turned fourteen, and they would have found him not guilty on his first-degree statutory sodomy count. Resp't. Ex. I at 6. Petitioner asserted that the victim's testimony at trial was vague and "showed some confusion" about when the first incident occurred, and that her deposition showed additional uncertainty.

The Missouri Court of Appeals found that Petitioner's claim was without merit and was refuted by the victim's testimony at her deposition and at trial. *Id.* The Missouri Court of Appeals denied the claim as follows:

> The victim testified at trial that she moved to the home on Lilac [where the abuse occurred] in May of 2008. Victim was thirteen years old at the time. She testified that [Petitioner] began touching her inappropriately "about a week to a month—it was about a week after we moved in" to the home on Lilac. . . . [Petitioner]'s contention that the evidence at trial showed some confusion is without merit. And there is nothing in the victim's deposition that establishes that the first incident did not occur until after the victim turned fourteen. We further note that the victim in her deposition also testified that she moved into the house on Lilac in June, definitely before July 4th, and that [Petitioner] moved in several weeks to a month later. She said that the abuse began in June or July because she only stayed down in the basement, where the first incident occurred, for a month after moving into the house. She moved upstairs before school started. The victim's deposition testimony, to the extent that it may be construed indefinite as to time, still placed the first incident of abuse prior to her fourteenth birthday.
>
> [Petitioner] failed to plead facts demonstrating that cross-examination and impeachment would have provided him with a defense or changed the outcome of the trial

Resp't. Ex. I at 7-8.

A review of the record shows that the Missouri Court of Appeals properly applied *Strickland* to this claim in an objectively reasonable manner. The extent of cross-examination is a matter of trial strategy that must be left to the judgment of counsel. *See Schaeffer v. Roper*, No. 4:03-CV-60 CAS, 2006 WL 852374, at *14 (E.D. Mo March 30, 2006). As the Missouri Court of Appeals correctly noted, nothing in the victim's deposition or trial testimony "establishes that the first incident did not occur until after the victim turned fourteen." Resp't Ex. I at 7. While the testimony offered by the victim at trial and during her deposition was somewhat lacking in clarity as to the exact dates involved, [4] there was no testimony whatsoever that could have led a jury to conclude that the first instance of sexual abuse occurred after the victim's fourteenth birthday. The victim was unequivocal both at trial and during her deposition that Petitioner began sexually abusing her during the first month that she lived in the house on Lilac Street, when she was staying in the basement. Resp't. Ex. A at 99-100; Resp't Ex. F at 52. Based on her testimony at trial and during her deposition, it would have been impossible to conclude that she continued to sleep in the basement any later than the first week of August 2008. The victim turned fourteen on August 24, 2008. Sound trial strategy requires counsel to balance the benefit of exploring an area of inconsistency against the possibility that in doing so she will confuse the jury with ultimately immaterial inconsistencies. The undersigned cannot conclude that trial counsel was ineffective for failing to question or impeach the victim more thoroughly, as her testimony clearly indicated that the first incident happened when she was still thirteen.

---

[4]  During her deposition testimony, the victim said that she was absolutely sure that she moved into the house on Lilac Street before July 4, 2008 (Resp't. Ex. F at 52) and that she stayed in the basement for the first month that she lived there. *Id*. at 57. At trial she testified that she moved into the house on Lilac Street in May of 2008, and that she stayed in the basement for the first month that she lived there. Resp't. Ex. A at 99.

The Court finds that trial counsel's performance did not fall outside the wide range of professionally competent assistance sanctioned by *Strickland*, and the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner. Because there was no "deficient performance" by counsel, we need not consider the "prejudice prong" of the *Strickland* analysis. *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009). The Court will deny relief on Grounds One and Two.

**B. Ground Three: Trial Court Abuse of Discretion**

In Ground Three, Petitioner argues that the trial court abused its discretion by overruling Petitioner's hearsay objection to the testimony of the victim's school Counselor and the victim's Friend, each of whom testified that TR told them what Petitioner had done to her. (Doc. 1 at 8). Petitioner alleges that the jury might not have believed TR's testimony without the bolstering provided by the testimony of her Counselor and Friend, and that the admission of the testimony violated his due process right to a fair trial. *Id*. Petitioner raised this ground in his direct appeal, and the Missouri Court of Appeals rejected this claim on the merits, finding that even if the allegedly inadmissible testimony was improper hearsay, the evidence "was not prejudicial to [Petitioner] and did not deny him the right to a fair trial or implicate the Confrontation clause." Resp't Ex. E at 5. The appellate court reasoned that because TR testified at trial about her conversations with her Counselor and Friend, and was subject to cross-examination about those conversations, the "principal defects in hearsay testimony [were] alleviated." *Id*. at 4-5.

The standard of review for state evidentiary rulings in federal habeas corpus proceedings is narrow. State court evidentiary decisions are only reviewable in federal habeas proceedings if the asserted error infringed a specific constitutional protection or was "of such magnitude as to deny fundamental fairness to the criminal trial." *Warden v. Wyrick*, 770 F.2d 112, 115-116 (8th

11

Cir. 1985). When the error complained of is that hearsay evidence was improperly admitted, the error is harmless unless a defendant can prove that it was so prejudicial that there is a reasonable probability that it affected the outcome of a trial. *See Glaze v. Redman*, 986 F.2d 1192, 1195 (8th Cir. 1993) (to prevail on such a claim a petitioner must "establish that the alleged error effectively rendered the entire trial fundamentally unfair and that absent the error, the outcome of the trial would probably have been different"); *see also United States v. Bohr*, 581 F.2d 1294, 1303 (8th Cir. 1978).

At trial, the Counselor testified that TR came to her office with her Friend to discuss a "secret." Resp't. Ex. F at 90. The Counselor further testified that TR seemed very "sad" and "quiet," so she asked TR whether anyone was making her feel uncomfortable, and TR responded, "My mother's boyfriend." Resp't. Ex. F at 90-92. The Counselor testified that she then asked TR whether he was having sex with her, and that TR nodded and began to cry. Resp't. Ex. F at 94-95. TR's Friend, when asked at trial whether TR had spoken to her about being touched inappropriately, responded, "Yes, Ma'am." Resp't. Ex. F at 126. She further testified that TR told her that she did not want anybody to know and asked her not to tell anyone. Resp't. Ex. F at 125-126. TR's Friend testified that she confided in the Counselor and convinced TR to go talk to the Counselor about what was happening to her. Resp't. Ex. F at 127-128.

To the extent that the testimony given by the Counselor and TR's Friend was offered to verify that the sexual abuse occurred, one could determine that it may have constituted hearsay. However, we agree with the Missouri Court of Appeals that even "assuming *arguendo* that the testimony at issue was inadmissible hearsay and improperly admitted, it was not prejudicial to [Petitioner] and did not deny him of the right to a fair trial or implicate the Confrontation

12

Clause." Resp't. Ex. E at 5. The "primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *Bohr*, 581 F.2d at 1304. "[W]here the declarant is also a witness, the rationale of the hearsay rule does not apply." *Id.* In this case, the government's primary trial witness was the victim, TR. She described at length and in detail various occasions on which Petitioner had touched her in a sexually inappropriate manner. She also testified as to the content of her conversations with the Counselor and her Friend about the abuse. She was cross examined at length on these matters. Accordingly, the undersigned concludes that the testimony of the Counselor and TR's Friend could not have had substantial influence on the outcome of the case, as it was at most cumulative, and any error in admitting it was harmless. Petitioner has not "establish[ed] that the alleged error effectively rendered the entire trial fundamentally unfair and that absent the error, the outcome of the trial would probably have been different." *Glaze*, 986 F.2d at 1195. The Court will deny relief on Ground Three.

IV.   **CONCLUSION**

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th

13

Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 7th day of February, 2018.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE